The STATE of Texas, Appellant,

v.

Jose T. VASQUEZ, Appellee.

No. B14–93–01166–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 17, 1994.

Rikke Burke Graber, Houston, for appellant.

Mary Samaan, Judith M. Prince, Houston, for appellee.

Before SEARS, LEE and BARRON, JJ.

## OPINION

LEE, Justice.

Appellee, Jose T. Vasquez (Vasquez), applied for a writ of *habeas corpus* and writ of *audita querela.* After a hearing, the trial court granted both writs. The State brings this appeal which presents two questions: 1) whether a guilty plea entered in 1981 was voluntary where the defendant was not admonished as to the deportation and naturalization consequences of his plea when such admonishment was not required by Tex.Code Crim.Proc.Ann. art. 26.13(a)(4) until 1985; and 2) whether the common law writ of *audita querela* is available in this Texas criminal case. We reverse.

### Background

In 1981, Vasquez, a Mexican citizen, pled guilty to a felony and served seven (7) years probation. Subsequently, Vasquez applied for naturalization, which was denied, presumably in part because he was a convicted felon.

In 1993, Vasquez filed an application for writ of *habeas corpus* and writ of *audita querela* contending that his guilty plea was involuntary because he was not fully informed of the consequences of his plea. There is no dispute that at the time he pled guilty he was represented by counsel and was given the admonishments as then required by the Code of Criminal Procedure art. 26.13. There is also no dispute that Vasquez was not admonished on the potential immigration consequences of his plea.

At the hearing on the writs, Vasquez testified that if he had known the guilty plea might effect his ability to become a naturalized citizen, he would not have entered the plea. The trial court found that Vasquez was

not properly warned of the legal consequences of entering a guilty plea and, therefore the plea was involuntary. Both writs were granted by the trial court. The trial court granted the writ of *audita querela* because it did not want "to engage in legal names, ... [was] not sure what that one involve[d] ... and [did]n't want to leave anything out."

### Analysis

█ In its first of two points of error, the State contends that the application for writ of *habeas corpus* was granted in error because the 1985 amendment to article 26.13 does not apply retroactively. Vasquez responds that the statute should apply retroactively because he entered his guilty plea without being informed of the devastating consequences of his plea. His contention is that because he was not informed of the *relevant* immigration consequences before he pled guilty, his plea was involuntary.

Currently, the Code of Criminal Procedure requires that before accepting a guilty plea, the court must admonish the defendant that a plea of guilty or *nolo contendere* may result in deportation or the denial of naturalization. Tex.Code Crim.Proc.Ann. art. 26.13(a)(4). Reversal is required when the court fails to comply with this statutorily required admonishment. *Morales v. State,* 872 S.W.2d 753, 754–755 (Tex.Crim.App.1994). However, this admonishment was not required until 1985, four years after Vasquez entered his guilty plea. Acts 1985, 69th Leg., ch. 671, § 1.[1] Therefore, Vasquez received all that was statutorily required.

█ We now turn to Vasquez' contention that his plea was involuntary and, therefore, invalid. Article 26.13 is a codification of due process requirements. *Ex Parte Evans,* 690 S.W.2d 274, 276 (Tex.Crim.App.1985). The requirements were codified to assure that each defendant who pleads guilty understands the charges against him and the consequences of his plea. *Basham v. State,* 608

1. When Vasquez pled guilty, the statute only required that the defendant be admonished of three things: 1) the range of punishment; 2) that the prosecutor's punishment recommendation is not binding on the court; and 3) that the right to appeal is limited. Tex.Code Crim.Proc.Ann. art. 26.13(a). No naturalization or deportation admonishment was required under the statute.

S.W.2d 677, 678 (Tex.Crim.App.1980). A plea of guilty or *nolo contendere* should not be accepted unless it appears that the plea is voluntary. *Benjamin v. State,* 874 S.W.2d 132, 134 (Tex.App.—Houston [14th Dist.] 1994, no pet.). Once a defendant agrees to the terms of a plea bargain, we are to presume that the plea was voluntary. *Id.* A valid, intelligently made plea does not become "vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Evans,* 690 S.W.2d at 277 (quoting, *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

In *Brady,* the U.S. Supreme Court indicated that a guilty plea was voluntary if the defendant was aware of the *direct* consequences of his plea, unless the plea was induced by threats, misrepresentations, or improper promises. *Brady,* 397 U.S. at 755, 90 S.Ct. at 1472. Thus, we have two inquiries: 1) was the plea induced by threats, misrepresentations or improper promises; 2) was Vasquez aware of the direct consequences of his plea? The Court of Criminal Appeals has grouped the circumstances when a plea is involuntary because of threats, misrepresentations, or improper promises into a non-exhaustive list of four: 1) conditional plea, 2) plea bargain broken or not kept, 3) erroneous advice of an attorney, and 4) erroneous advice of an attorney and/or judge. *Evans,* 690 S.W.2d at 276–277. Vasquez only contends that he would not have pled guilty had he known that he might be denied naturalization. There are no allegations of threats, misrepresentations or other improper activity by the court or the prosecution. Thus, for Vasquez' plea to be involuntary he must not have been aware of the direct consequences of his plea.

■ Vasquez argues that his guilty plea was involuntary because he was unaware of a *relevant* consequence. As indicated in *Brady, supra,* the correct standard is whether the defendant was aware of the *direct* consequences of his plea. There are numerous *relevant* consequences of pleading guilty to a felony which are not included in the admonishments: employment difficulties and restraints, ineligibility to vote, ineligibility for jury service, restriction on travel and others. *See United States v. Banda,* 1 F.3d 354 (5th Cir.1993) Deportation or denial of naturalization are harsh *collateral* consequences, but they are not direct consequences which are constitutionally required under *Brady. Banda,* 1 F.3d at 356.

In our case, Vasquez was represented by counsel, given the admonishment required in 1981 and entered a guilty plea. Under standards established in *Brady* and *Evans,* we hold: 1) Vasquez' plea was not induced by threats, misrepresentations, or improper promises; 2) the immigration consequences of Vasquez' plea were collateral consequences; and 3) his plea was voluntary. Accordingly, the writ of *habeas corpus* was improperly granted.

■ The State argues, in its second point of error, that the writ of *audita querela* should not have been granted because such relief is not available under the circumstances of this case. Vasquez counters that without equitable relief he will not be eligible for naturalization.

*Audita querela* is a relatively obscure "common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment [due to] some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." BLACK'S LAW DICTIONARY 131 (6th ed. 1990). The writ has been abolished in federal civil cases by Federal Rule of Civil Procedure 60(b).[2] *Id.;* FED. R.CIV.P. 60(b). The U.S. Supreme Court has held that a similar common law writ, *coram nobis,*[3] is still available in federal criminal

---

2. The relevant portion of Rule 60 reads:

Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

FED.R.CIV.P. 60(b).

3. In *United States v. Reyes,* the Fifth Circuit described the differences in the two writs as follows:

[A writ of *audita querela* ] is similar, but not identical, to a writ of *coram nobis* which

cases. *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *United States v. Reyes*, 945 F.2d 862, 865 (5th Cir.1991).

We find no Texas cases in which the validity of a writ of *audita querela* has been addressed, and none were cited in the briefs. While the parties have directed our attention to three federal decisions which deal with factually similar situations, "[d]ecisions of the federal courts of appeals and district courts do not bind [this court,] although they are received with respectful consideration." *Denton v. Department of Pub. Safety Officers*, 862 S.W.2d 785, 791 n. 4 (Tex.App.—Austin 1993, writ granted). *See, e.g., Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294 (Tex.1993); *Emscor, Inc. v. Alliance Ins. Group*, 804 S.W.2d 195 (Tex.App.—Houston [14th Dist.] 1991, no writ).

Vasquez relies upon the federal district court decision in *Salgado v. United States*, 692 F.Supp. 1265 (E.D.Wash.1988). In *Salgado* the court granted *audita querela* relief to a Mexican citizen who was attempting to become naturalized, but who had been convicted of a minor marijuana offense. Over the preceding forty years, Salgado had mainly worked in the United States. He was married to a United States citizen, and, other than the minor marijuana offense, he was a respectable member of society. Based on the equities of the situation and the circumstances of the individual involved, the court granted *audita querela* relief. *Id.* at 1271.

On the other hand, the State relies upon two Fifth Circuit decisions: *United States v. Banda*, 1 F.3d 354 (5th Cir.1993), and *United States v. Reyes*, 945 F.2d 862 (5th Cir.1991).

In *Reyes* the defendant, a Venezuelan, pled guilty to a drug offense. After he served his sentence, the Immigration and Naturalization Service (INS) brought deportation proceedings. Based in part on the decisions of other circuit courts,[4] the court refused to grant *audita querela* relief. The court pointed out that the writ of *audita querela* was intended to allow a defendant to present a new defense that was not discovered until after the judgment was rendered, and allowing a writ of *audita querela* to vacate a conviction violates the separation of powers. Congress sets the naturalization and deportation standards and it is the responsibility of the INS to enforce those Congressional mandates. *Reyes*, 945 F.2d at 866–867.

Similarly, in *Banda* the defendant was facing deportation after pleading guilty to a drug possession charge. The court reasoned that *audita querela* relief is available when there is a "legal defense arising after the judgment." However, the "defense against the judgment must be based in law, not in equity." Describing *audita querela* as a "slender reed upon which to lean," the court denied the relief because there was "no defect in the judgment below based in law." *Banda*, 1 F.3d at 356.

■ We find the *Banda* and *Reyes* opinions persuasive. Relief by *audita querela* is not available unless the petition raises a new defense to the prior criminal conviction based in law, not equity. *Banda*, 1 F.3d at 356. Because Vasquez only requested equitable relief and failed to present a new legal defense to the underlying criminal judgment, we find the trial court erred in granting his

Black's defines as a "procedural tool whose purpose is to correct errors of fact only, and its function is to bring before the court rendering the judgment matters of fact which, if known at time judgment was rendered, would have prevented its rendition. Its function is to bring attention of the court to, and obtain relief from, errors of fact, such as a valid defense existing in facts of case, but which, without negligence on defendant's part, was not made, either through duress or fraud or excusable mistake."
The noted distinction seems to be largely, if not entirely, one of historical nomenclature having relevance to timing, not substance. While, under the stated definition, *coram nobis* is used to

attack a judgment that was infirm, for reasons that later came to light, at the time it was rendered, *audita querela* was a means of attacking a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition.
It is questionable whether we have restricted *coram nobis* either to factual matters or so as to exclude post-conviction developments.
*Reyes*, 945 F.2d at 863 n. 1 (citations omitted).

4. The Fifth Circuit relied on *United States v. Holder*, 936 F.2d 1 (1st Cir.1991), and *United States v. Ayala*, 894 F.2d 425 (D.C.Cir.1990).

application. Accordingly, the decision of the trial court is reversed.