**Amauri Saenz MARIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–93–00108–CR.**

Court of Appeals of Texas,
El Paso.

March 30, 1995.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state/appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from an order revoking probation. On October 23, 1990, Appellant was charged with possession of cocaine in an amount less than 28 grams, to which he pled guilty. On February 5, 1991, the trial court accepted Appellant's plea but deferred adjudication of guilt, and placed Appellant on 8 years' probation and imposed a $350 fine.

On February 23, 1993, the State petitioned to revoke Appellant's probation. On March 19, 1993, the trial court conducted a hearing on the State's motion, after which it revoked Appellant's probation, adjudicated him guilty of the original offense, and assessed punishment at 15 years' and 30 days' confinement in the Institutional Division of the Texas Department of Criminal Justice. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

After being charged with the underlying offense, Appellant pled guilty and moved the trial court to place him on probation and defer adjudication of his guilt. At the hearing on Appellant's motion, the trial court questioned and admonished Appellant about various rights he was relinquishing by pleading guilty, including two admonishments about his right to appeal.

THE COURT: You are also admitting all the allegations in the indictment and confessing that you committed the offense alleged?

A. Yes.

THE COURT: And, therefore, your right of appeal in this case will be very, very limited. Do you understand that, because you are doing all of these things?

A. Yes.

. . . .

THE COURT: [I]f it becomes necessary for you to come back before the Court because you cannot comply with these terms and conditions of probation, and actually I think just for any reason if I felt like it, I could revoke your adult probation and find you guilty sometime in the future based upon the evidence we are going to hear here today without any objection. And if the Court did that, then the Court could find you guilty and sentence you to up to 20 years in the Texas Department of Corrections. Do you understand that?

A. Yes.

## II. *DISCUSSION*

Appellant attacks the judgment of the trial court in a single point of error, claiming that his original guilty plea was involuntary because the trial court did not inform him that he would not be able to appeal a later decision to revoke his probation and adjudicate him guilty.

 It is a basic tenet of our criminal jurisprudence that guilty pleas must be made voluntarily and knowingly. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969); *Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969); *Ex parte Evans,* 690 S.W.2d 274 (Tex.Crim. App.1985); *Elliott v. State,* 874 S.W.2d 238 (Tex.App.—El Paso 1994, no writ). For a defendant's guilty plea to be voluntary, he must "[possess] an understanding of the law in relation to the facts" of his case. *McCarthy v. United States,* 394 U.S. at 466, 89 S.Ct. at 1171; *Boykin v. Alabama,* 395 U.S. at 244, 89 S.Ct. at 1712–13. The requisite understanding includes an "awareness of the relevant circumstances and likely consequences" of pleading guilty. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *State v. Vasquez,* 889 S.W.2d 588 (Tex.App.—Houston [14th Dist.] 1994, no pet.). To this end, the Texas Code of Criminal Procedure requires a trial court to inform a defendant of the possible consequences of a violation of the terms of his probation when it places him on probation and defers adjudication of his guilt. TEX. CODE CRIM.PROC.ANN. art. 42.12 § 5(a) (Vernon Supp.1995); *Graham v. State,* 873 S.W.2d 709, 710 (Tex.App.—Eastland 1994, no pet.); *Ray v. State,* 877 S.W.2d 425, 426 (Tex.App.—Eastland 1994, pet. granted). Among these consequences is the inability of the defendant to appeal the trial court's determination to proceed with an adjudication of guilt on the original charge. *Id.* at § 5(b).

In interpreting a previous version of Article 42.12, Section 5(a), the Court of Criminal Appeals found that a trial court need not inform a defendant of the "consequences of deferred adjudication." *McNew v. State,* 608 S.W.2d 166, 177 (Tex.Crim.App.1980). The case of *Graham v. State,* 873 S.W.2d at 709,

decided under the current version of the article, holds that a criminal defendant's guilty plea is rendered involuntary by the trial court's failure to inform him that the decision to proceed with an adjudication of guilt may not be appealed. *Graham* acknowledges *McNew* as contrary authority but concludes that the intervening statutory changes effectively overrule *McNew.* To a limited extent, we agree.

The defendant in *McNew* argued that his due process rights were abridged when the trial court imposed a ten-year prison sentence upon adjudication of guilt after imposing only a five-year probated sentence when it previously deferred such adjudication. *McNew v. State,* 608 S.W.2d at 169. The defendant claimed that the Legislature never intended to allow trial courts to "up the ante" by taking into consideration the offense made the basis of the revocation when assessing punishment for the original offense. *Id.* Relying on a previous version of Article 42.12, the Court of Criminal Appeals found the length of the earlier probated sentence inappropriate for comparison with the later actual sentence, stating that:

> It is clear the procedure provided for deferred adjudication is different from the other type or types of probation provided by the statute, and it is clear the Legislature intended that after adjudication of guilt following deferred adjudication the assessment of punishment shall be as if the adjudication of guilt had not been deferred. We appreciate and understand [A]ppellant's concerns, but **any procedural changes are for the Legislature to consider,** not this court.
>
> . . . .
>
> While it would be far better practice for the trial court to admonish a defendant as to the consequences of deferred adjudication, we have held that Article 26.13 ... does not require such admonishment.

*McNew v. State,* 608 S.W.2d at 177 (emphasis added). *Graham* seizes on this nod to the Legislature and concludes that the 1989 amendments to Article 42.12, which affirmatively require the trial court to inform a defendant of the possible consequences of a

probation violation, constitute precisely the species of remedial Legislative action contemplated by *McNew*. *Graham v. State*, 873 S.W.2d at 710. Although we do not entirely agree, we follow *Graham* to the extent it concludes that the 1989 amendments render *McNew* inapplicable to deferred adjudication offenses in felony cases.

The version of the deferred adjudication statute under which *McNew* was decided reads:

> Sec. 3d. (a) When in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation on reasonable terms and conditions as the court may require and for a period as the court may prescribe not to exceed 10 years. . . .
>
> (b) On violation of a condition of probation imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 8 of this Article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with adjudication of guilt on the original charge. **No appeal may be taken from this determination.** After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred.[1]

In 1989, the Legislature altered the provision to read:

> Sec. 5. (a) Except as provided by Subsection (d) of this section, when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defen-

dant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision. **The judge shall inform the defendant orally or in writing of the possible consequences under Subsection (b) of this section of a violation of community supervision.** If the information is provided orally, the judge must record and maintain the judge's statement to the defendant. . . .

> (b) On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 21 of this Article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. **No appeal may be taken from this determination.**[2]

The foregoing quotations reveal that both versions of the provision prevent a defendant from appealing the trial court's decision to proceed with an adjudication of guilt. The 1989 amendments to Subsection (a) for the first time impose the requirement that the trial court inform a defendant of the consequences of a violation of probation, among which is the inability to appeal identified in Subsection (b).

The State attempts to limit *McNew* to the narrow issue addressed in the portion of the opinion that indicates a preference for legislative reform, correctly claiming that the propriety of sentencing a criminal defendant to a term of imprisonment longer than was the term of his failed probation is distinct from the need to inform him that he may not appeal a decision to revoke his probation and proceed with an adjudication of guilt. Both issues, however, might properly be characterized as issues of admonishment. Indeed, in *McNew* the Court of Criminal Appeals itself so characterized the latter issue. *McNew v. State*, 608 S.W.2d at 177. Thus, either the issue addressed in *McNew* is one

---

1. Act of May 2, 1975, 64th Leg., R.S., ch. 231, Tex.Gen.Laws 572 (emphasis added) (then codified at Tex.Code Crim.Proc.Ann. art. 42.12 § 3d (Vernon)), *quoted in McNew v. State*, 608 S.W.2d at 170.

2. Act of June 15, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen.Laws 3471, 3500 (emphasis added) (currently codified at Tex.Code Crim. Proc.Ann. art. 42.12 § 5 (Vernon Supp.1995))

of admonishment by judicial fiat or, if it is not, the Court of Criminal Appeals expressly broadened its holding in *McNew* to encompass such issues. When the Legislature required trial courts to inform a criminal defendant of the consequences of violating probation, then, it effectively overruled *McNew* to the extent it holds that such admonishments are not required.

The State next relies on *Price v. State,* 866 S.W.2d 606 (Tex.Crim.App.1993), which holds that a trial court need not comply with Section 5(a) before accepting a defendant's guilty plea in a misdemeanor case. *Price* conspicuously limits its holding "to deferred adjudication proceedings in misdemeanor cases." *Price v. State,* 866 S.W.2d at 607. Although, the State argues that the distinction is without consequence, it was expressly drawn by the Court of Criminal Appeals, and we make no effort to circumvent it.[3] *Accord Ray v. State,* 877 S.W.2d at 426 n. 3; *Graham v. State,* 873 S.W.2d at 711.

Finally, the State relies on *Keller v. State,* 854 S.W.2d 224, 226 (Tex.App.—Beaumont 1993, no pet.), and *Richard v. State,* 788 S.W.2d 917, 920 (Tex.App.—Houston [1st Dist.] 1990, no pet.), which hold that the failure to admonish a defendant that there will be no appeal if his probation is revoked while on deferred adjudication does not render the defendant's plea involuntary. These cases simply contravene *Graham.* They rely

exclusively on *McNew* and make no mention of the 1989 amendments to Article 42.12, failing altogether to address the effect of the Legislature's new requirement that a trial court inform a defendant of the consequences of violating probation. Because our decision is based on the 1989 amendments, which we earlier found to vitiate much of *McNew,* we are not dissuaded from our conclusion by case law that appears unaware of the amendments.

In a one-sentence footnote in its brief, the State addresses the extent to which the trial court complied with the requirements we today find in Article 42.12, claiming without elaboration or citation of authority that the trial court's warning that it could revoke Appellant's probation "without any objection" substantially complies with the requirement of Article 42.12, Section 5(a) of the Code of Criminal Procedure. The State makes no similar argument with respect to the trial court's statement that Appellant's right to appeal would be "very, very limited." We nonetheless think it prudent to note the textual distinctions between the two uttered statements and the admonishment required by Article 42.12.

Article 42.12, Section 5(a), requires the trial court to inform a defendant of the consequences of a probation violation that are identified in Section 5(b). One of the conse-

---

**3.** The Court of Criminal Appeals explained the distinction by focusing on the greater gravity of a felony offense:

In *McNew,* supra, a felony case, counsel contended that the Legislature "never intended the ante to be raised after revocation and that 'probation' under the deferred adjudication of guilt should be treated like other probation cases." He argued that under such judicial construction permitting such increase in punishment, attorneys would not allow their clients to plead guilty pursuant to a plea bargain involving deferred adjudication because:

"[A] defendant could be placed on deferred adjudication for the minimum term fixed as penalty for the offense charged and that after revocation of probation and adjudication of guilt the punishment could be assessed at the maximum term fixed as penalty for the offense charged. This permits the court to up the ante taking into consideration the offense or conduct made the basis of the revocation."

*Id.* at 176. The Court rejected the contention and argument for the reason that "the Legisla-

ture clearly intended that after adjudication the assessment of punishment shall be as if the adjudication of guilt had not been deferred," but then expressed its appreciation and understanding of those "concerns." *Id.* at 177.

Perhaps similar concerns motivated the Legislature when it amended Sec. 5(a) to require the trial court to inform a defendant of such consequences, among others. **We believe though that such concerns in a felony case are not likely to be as weighty in [a] misdemeanor case.** Unlike the broad range of punishment up to life or 99 years for many felony offenses, the maximum punishment for a Class A misdemeanor is one year, moreover, Sec. 5(a) permits a period of probation longer than the maximum, not to exceed two years.

In any event, our construction of Sec. 5(a) will serve to effectuate the legislative mandate in the manner it provided and thus must have intended. *Price v. State,* 866 S.W.2d at 612 n. 9 (emphasis added).

quences Section 5(b) identifies is the inability to appeal the decision to revoke probation and proceed to an adjudication of guilt. Section 5(b) bars appeal altogether. It does not merely limit a defendant's right to appeal. Similarly, Section 5(b) bars appeals, not objections. While the distinction here is thin, we think it artificial to conclude as a matter of law that a reference to trial court "objections" encompasses avenues of appeal in this and other higher Courts.

Alternatively, we observe that the doctrine of substantial compliance generally applies to save technically inadequate admonishments from violating Section 26.13 of the Code of Criminal Procedure. Significantly, although the doctrine of substantial compliance was not initially woven into the fabric of Section 26.13,[4] it being developed by the judiciary in an effort to ameliorate the demanding requirements of the section,[5] it has now been incorporated into the statute by the Legislature.[6] Thus, we can safely assume the Legislature is aware of the doctrine and its affect on the vitality of Section 26.13. We can then reason that the Legislature purposefully omitted the doctrine from the admonishment-like requirement of the 1989 amendments to Section 42.12 that a trial court inform a defendant of the consequences of violating probation, opting instead to prescribe a stricter compliance with the section and consequently requiring more complete information about the consequences of probation violations. *Accord Ray v. State,* 877 S.W.2d at 427 ("Article 42.12, [S]ection 5 does not have a substantial compliance provision, nor do we find that one is implied.")

Our interpretation of Article 42.12 is supported by a cryptic passage in *Price.* Addressing the defendant's ambitious constitutional claims, the Court of Criminal Appeals stated:

> Failure to admonish a defendant of certain post-revocation and adjudication contingencies, however, does not violate rights to due process and effective assistance of counsel. While it may be better practice to admonish as to consequences of deferred adjudication in a felony case, **Article 26.13** does not require it.

*Price v. State,* 866 S.W.2d at 611 (emphasis in original) (citations and internal quotations omitted). By emphasizing that Article 26.13, with its substantial compliance standard, does not require such admonishments, the Court of Criminal Appeals expressly left open the question whether Article 42.12, which we repeat has no parallel adulterated standard for compliance, requires them. We today answer this question in the affirmative. Appellant's point of error is sustained.

Having sustained Appellant's point of error, we reverse the judgment of the trial court and remand the cause to it for further proceedings.

KOEHLER, J., not participating.

---

**4.** *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws 317, 427, *amended by* Act of May 23, 1973, 63rd Leg., R.S., ch. 399 § 2(A), 1973 Tex.Gen.Laws 883, 969.

**5.** The phrase "substantial compliance" was coined, as far as we can discern, in *Gamez v. State,* 506 S.W.2d 618, 619 (Tex.Crim.App.1974), although previous cases employed the same concept under different nomenclature.

**6.** *See* Act of May 29, 1975, 64 Leg., R.S., ch. 341 § 3, 1975 Tex.Gen.Laws 909 (first amendments to incorporate "substantial compliance" into statute) (codified as later amended at Tex.Code Crim.Proc.Ann. art. 26.13 (Vernon 1989 and Supp. 1995)).