Rigoberto Rodriguez PINA, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–99–00342–CR.

Court of Appeals of Texas,
El Paso.

Sept. 28, 2000.

---

Robert V. Garcia, Jr., Odessa, for Appellant.

Al W. Schorre, Jr., Dist. Atty., Eric Kalenak, Asst. Dist. Atty., Midland, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

Rigoberto Rodriguez Pina appeals his conviction for delivery of a controlled substance. We reverse the judgment of the trial court and remand the case for a new trial.

### *FACTS*

On January 31, 1997, undercover police officer Sergeant Terry Preston approached Byron Hickey to buy crack cocaine. Hickey took Sergeant Preston's money and together they drove to a parking lot behind Pina's Tire Shop where Hickey contacted a man who exchanged the money for powder cocaine. At trial, Preston identified the man they had contacted as Rigoberto Pina.

Adrian Chavez, Rigoberto Pina's attorney, had also represented Pina's brother, Eloy Pina, in an unrelated criminal case. The case had been resolved only a month or two before Rigoberto Pina's trial began. Chavez had also represented Eloy's son and wife in earlier matters. Knowing that Rigoberto denied selling the cocaine, and also knowing that Eloy Pina and Rigoberto Pina looked alike, Chavez prepared a mistaken identity defense. Not wishing to create any conflict of interest problems, however, Chavez decided to rely on a simple reasonable doubt defense. Chavez later characterized his decision as disastrous

because the State argued in closing that the mistaken identity defense must have been frivolous because defense counsel had not even bothered to call Eloy Pina to the stand. Rigoberto Pina was convicted, and filed a motion for new trial based on ineffective assistance of counsel, which the trial court denied. This appeal follows.

## STANDARD OF REVIEW

■■■■ The trial court has discretion to grant or deny a motion for new trial.[1] An appellate court does not substitute its judgment for that of the trial court but decides whether the trial court's decision constitutes an abuse of discretion.[2]

### Ineffective assistance based on actual conflict of interest

In two interrelated issues on appeal, Pina contends that his federal and state constitutional rights were violated when the trial court abused its discretion by denying his motion for new trial because the evidence showed that Pina's trial attorney rendered ineffective assistance of counsel based on an actual conflict of interest. We agree.

■■■■ Ordinarily our standard of review for ineffective assistance of counsel claims is the test set out in *Strickland v. Washington*,[3] which requires a twofold showing: (1) that counsel's representation fell below an objective standard of reason-

ableness; and (2) that but for counsel's unprofessional errors, the result of the proceeding would have been different.[4] The second prong of the test, however, does not apply when the alleged error under review is an *actual* conflict of interest.[5] If counsel's performance has been adversely affected by his *active* representation of conflicting interests, prejudice is "irrefutably presumed."[6] In cases concerning conflict of interests claims, the mere possibility of a conflict of interest is insufficient to impugn a criminal conviction.[7] Nevertheless, a defendant who has not complained of a conflict of interest at trial can demonstrate a violation of the right to reasonably effective assistance of counsel if the defendant can show that defense counsel was burdened by an actual conflict of interest that had an adverse effect on specific instances of the attorney's performance.[8]

■■■■ In cases involving joint representation of codefendants, an actual conflict of interest arises when one defendant stands to gain significantly by counsel adducing evidence or arguments that are damaging to the cause of a codefendant whom counsel is also representing.[9] Similarly, in a conflict of interest case *not* involving joint representation, our sister court was guided by the rule that an actual conflict of interest exists if counsel is required to make a choice between advancing the client's in-

1. *Stults v. State*, 23 S.W.3d 198, 206 (Tex. App.—Houston [14th Dist.] 2000, no pet. h.).

2. *Id.*

3. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Maya v. State*, 932 S.W.2d 633, 635 (Tex.App.—Houston [14th Dist.] 1996, no pet.).

4. *Maya*, 932 S.W.2d at 635 (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064).

5. *Id.* (citing *Strickland v. Washington*, 466 U.S. at 692, 104 S.Ct. at 2067).

6. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim.App.1999); *see Maya*, 932 S.W.2d at 635; *Ramirez v. State*, 13 S.W.3d 482, 487

(Tex.App.—Corpus Christi 2000, pet. granted).

7. *Maya*, 932 S.W.2d at 635.

8. *Howard v. State*, 966 S.W.2d 821, 826 (Tex. App.—Austin 1998, pet. ref'd).

9. *Maya v. State*, 932 S.W.2d 633 (Tex.App.—Houston [14th Dist.] 1996, no pet.) (actual conflict existed between man and wife codefendants), and *Amaya v. State*, 677 S.W.2d 159 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd) (actual conflict existed between codefendants because alibi witnesses would have exploited one codefendant's benefit while harming other codefendants).

terest in a fair trial or advancing other interests to the client's detriment.[10]

In *Fulgium v. State*,[11] Fulgium claimed that his trial counsel had a conflict of interest after it was discovered that one of counsel's former clients from an earlier decade was the State's key witness.[12] Fulgium contended that the conflict compromised his right to loyal representation because his counsel had an ongoing duty of loyalty to the witness.[13] Although Fulgium raised no objection to his counsel's continued representation at trial, he asserted that an actual conflict of interest existed because the past representation "chilled" his counsel's ability and "probable desire" to fully investigate the witness's story and prevented counsel from impeaching the witness with a prior felony conviction.[14] The court's review of the record, however, showed that counsel had valid reasons why he decided not to interview or impeach the witness, and no testimony was developed at the new trial hearing to show that counsel's past representation had anything to do with these decisions.[15] Because a number of years had elapsed and because there was no evidence showing trial counsel had a continuing obligation to the witness, or that an actual conflict had adversely affected counsel's performance, any purported conflict of interest was implied, not actual, and implied conflicts are not sufficient to support a claim of ineffective assistance.[16]

Here, we must determine whether defense counsel was burdened by an actual conflict of interest in his representation of Rigoberto Pina, due to his representation of Eloy Pina in a different proceeding, and if so, whether that actual conflict adversely affected Chavez's performance. After our review of the record, we answer both questions in the affirmative. In his affidavit supporting the motion for new trial, Chavez averred:

Before trial I was prepared to defend Mr. Pina on a basic reasonable doubt theory because I knew from discovery that the State's main witness, BYRON HICKEY, denied even knowing Mr. Pina and there was no other direct evidence of my client's alleged delivery.

Shortly before trial, while making final preparations for trial, I asked Mr. Pina if there was anyone else that could have delivered the cocaine at the auto shop as alleged by the State and he said he did not know. I then asked about his brother, ELOY PINA, a client of mine, because I remembered he (Eloy) had a resemblance to Mr. Pina that could [be] confusing to others. Mr. Pina told me he had asked his brother Eloy, but could never get a clear answer from Eloy. When I heard this I began to suspect that perhaps the State's witnesses had confused Mr. Pina with his brother, Eloy.

---

10. *See Fulgium v. State*, 4 S.W.3d 107, 114 (Tex.App.—Waco 1999, pet. ref'd) (emphasis added). Similarly, in *Wolf v. State*, the court held that defense counsel's previous representation of the murder victim in his divorce proceeding against the ex-wife/defendant did not create a conflict of interest where the record showed no actual conflict existed or that continuing professional responsibilities existed. *Wolf v. State*, 674 S.W.2d 831, 843–44 (Tex.App.—Corpus Christi 1984, pet. ref'd), *overruled on other grounds, Reed v. State*, 744 S.W.2d 112 (Tex.Crim.App.1988). In *Ex parte Morrow*, the Texas Court of Criminal Appeals determined that an actual conflict of interest did not exist because the record showed that trial counsel was not "actively representing conflicting interests" in that

counsel did not advance his own interest over that of his client. *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex.Crim.App.1997), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 142 L.Ed.2d 31 (1998).

11. 4 S.W.3d 107 (Tex.App.—Waco 1999, pet. ref'd).

12. *Fulgium*, 4 S.W.3d at 114.

13. *Id.*

14. *Id.*

15. *Id.* at 114–15.

16. *Id.* at 115.

I realized that this possible defense could cause conflict of interest problems for me because Eloy Pina had been a regular, long time client of mine and our firm. In fact, I was actually representing both Eloy Pina and Rigoberto Pina simultaneously in unrelated cases and had just prior to Mr. Pina's trial pled Eloy Pina to probation in a possession of cocaine with intent to deliver case, where like Rigoberto's case, Eloy had delivered cocaine to a confidential informant under similar circumstances. The facts in Eloy's case and other information I know about Eloy Pina as a result of my previous representation of him led me to believe Eloy Pina was certainly capable of committing the crime charged against his brother. I did not personally confront Eloy Pina of my suspicions because I did not want to stir up any conflict problems.

During trial, I decided to test my mistaken identity theory by asking Sgt. Terry Preston during cross-examination. I showed him two photographs, one of Eloy and the other of Rigoberto, and asked him to choose the picture that most looked like the person he claimed to have delivered drugs to Mr. Hickey and in front of the jury he pointed to Eloy Pina's photograph.

With this testimony by Sgt. Preston and the anticipated testimony of Byron Hickey of not knowing Mr. Rigoberto Pina, I felt confident I could simply argue reasonable doubt and gain an acquittal. I did not feel it would be necessary to call any witnesses and possibly get into a conflict of interest problem of trying to prove Eloy Pina committed the crime. I did not want to do this because I felt duly bound to remain loyal to Eloy and not cause him anymore legal problems or implicate him in another crime. Unfortunately, the trial took an unexpected turn for the worse that called for a change in plan.

After I successfully cross-examined Sgt. Preston, the trial took an unexpected two week delay because Mr. Hickey had chosen not to appear. During the interim, I did not attempt to interview Eloy Pina during this time, again to avoid any conflict problems. When the trial[ ] resumed, the State, over my objection, was able to regroup and prepare an impressive rehabilitation of Sgt. Preston's possible mistaken identification testimony. The State was able to bring Mr. Pina's driver[ ]'s license photograph that Sgt. Preston claimed he relied on a day or two after the offense to identify Mr. Pina. The State also started claiming in front of the jury that I had somehow purposefully confused Sgt. Preston into misidentifying Eloy Pina as the person who committed the offense.

I knew at that time that my basic reasonable doubt defense would be insufficient and that I would have to more aggressively pursue the mistaken identity theory by presenting evidence. However, I found myself in the dilemma of trying to present this defense without hand delivering the State's case against Eloy on a silver platter. The loyalty I still felt to Eloy prevented me from confronting Eloy about my theory and prevented me from simply issuing a subpoena for him to come to trial. These would have been my usual tactics if Eloy had not been a client. Instead of actively pursuing Eloy, I decided to put my client, Rigoberto, on the witness stand instead and rely on Sgt. Preston's earlier testimony and Mr. Hickey's denials. This tactic quickly backfired when the State rightly pointed out to the jury in final argument that my mistaken identity defense must be frivolous because I had not even bothered to call Eloy Pina to the stand and instead had relied on slight of hand tricks to cast doubt on Sgt. Preston's testimony. In the end, my hesitance in vigorously defending Mr. Pina for fear of implicating Eloy Pina proved disastrous. I should have recognized the consequences and results of my hesitance and withdrawn from

this case, and at least informed the Court of my dilemma but I did not.

Chavez's testimony at the hearing on the motion for new trial mostly mirrored the statements he made in his affidavit. In addition, Chavez testified that had he called Eloy as a witness, he would have felt obligated to advise him to plead the Fifth Amendment "as his lawyer." Chavez testified that to do otherwise would carry the risk that Eloy would incriminate himself because of the attorney-client relationship between them. Because of these difficulties, Chavez chose simply to avoid talking to Eloy at all.

We find that this evidence established an actual conflict, not a merely speculative one as urged by the State. Chavez testified that he framed both his trial preparation and presentation to protect Eloy Pina at the expense of a zealous defense for Rigoberto Pina, thereby attempting to serve two masters.[17] We find that defendant made a showing of actual conflict entitling him to a new trial, and the trial court erred in not allowing it.

### Harm

■ Having determined that an actual conflict existed, we must now determine what harm analysis applies in this situation. Initially, we note that this is constitutional error. The Sixth Amendment to the United States Constitution and Article I, § 10 of the Texas Constitution state that a defendant in a criminal trial has the right to assistance of counsel.[18] The "right to counsel" necessarily means the right to the *effective* assistance of counsel.[19] Thus, under Texas Rule of Appellate Procedure 44.2(a), we must reverse unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[20] Moreover, this is a rare situation where prejudice to the defendant is presumed.[21] In *Mitchell v. State*, the Court of Criminal Appeals discussed the rules governing reversible harm in ineffective assistance of counsel cases:

> The general federal constitutional rule is that a defendant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance.... The only exceptions to this general rule are 'actual or constructive denial of the assistance of counsel altogether,' various kinds of 'state interference' with counsel's assistance, and when *counsel* 'is burdened by an actual conflict of interest' which adversely affects counsel's performance. *In these circumstances no affirmative proof of prejudice is required because prejudice is irrefutably presumed.*[22]

We find that such is the case before us. Not only are we unable to declare that the actual conflict did not contribute to the conviction and punishment beyond a reasonable doubt, we are also bound to an irrefutable presumption of prejudice. We sustain Pina's issues on appeal.

### *CONCLUSION*

We reverse the judgment of the trial court and remand the cause for a new trial.

---

**17.** *Howard,* 966 S.W.2d at 826.

**18.** *Henderson v. State,* 13 S.W.3d 107, 109 (Tex.App.—Texarkana 2000, no pet.) (citing U.S. Const. amend. VI; Tex. Const. art. I, § 10).

**19.** *Robinson v. State,* 16 S.W.3d 808, 2000 WL 369127, at *3 (Tex.Crim.App.2000) (emphasis added).

**20.** Tex.R.App. P. 44.2(a).

**21.** *See Mitchell v. State,* 989 S.W.2d 747, 748 (Tex.Crim.App.1999).

**22.** *Id.* (emphasis added) (internal citations omitted).