Angela TALBOTT, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–01–01021–CR, 14–01–01022–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 24, 2002.

---

Leora Teicher Kahn, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FOWLER.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

Appellant waived a jury trial and pleaded guilty to (1) intentionally and knowingly causing serious bodily injury to a child, and (2) injury to a child by failing to seek treatment and medical help. The trial judge assessed punishment of eighteen years in the Texas Department of Criminal Justice, Institutional Division. In six points of error, appellant complains that (1) her counsel was ineffective, (2) her plea

was involuntary and unknowingly entered, and (3) the trial court erred in overruling her motion for new trial. We affirm.

## FACTUAL BACKGROUND

Appellant has a history of child abuse allegations involving all three of her children. When appellant took her youngest child to a doctor to treat the baby for congestion, the doctor noticed a large soft spot on the baby's head and instructed appellant to take her baby to a hospital for x-rays. The x-rays confirmed a large fracture on the right side of the baby's head, consistent with signs of child abuse. Suspecting abuse, appellant's doctor instructed her to return to the hospital to allow the hospital's doctors to examine the child. At the hospital, the attending physician ordered a complete x-ray of the child and found further evidence of past abuse. As a result, appellant was charged with physical abuse and the failure to seek timely medical help for her child's injuries.[1] Appellant pleaded guilty to both charges and elected to have the trial judge assess punishment. During this same time, a civil suit was before a family district court to consider the temporary removal of appellant's children from her care and, ultimately, to consider the termination of her parental rights.

## DISCUSSION

Appellant raises six points of error. In her first and second issues, appellant complains she was denied effective counsel under the United States and the Texas Constitutions. Third, she complains her guilty plea was not made knowingly and voluntarily. In her fourth and fifth issues, she complains the trial court erred in overruling her motion for a new trial because she received ineffective assistance of coun-sel. Finally, appellant argues the trial court erred in overruling her motion for a new trial because her plea was involuntary. In response, the State contends appellant waived her right to appeal. Because the State's issue could be dispositive, we will address it first.

## I. Waiver of Right to Appeal

For many years, the Court of Criminal Appeals held a defendant could not waive her right to appeal, either pre-trial or pre-sentencing. *See Ex parte Townsend,* 538 S.W.2d 419, 420 (Tex.Crim. App.1976); *Ex parte Dickey,* 543 S.W.2d 99, 101 (Tex.Crim.App.1976); *Ex parte Thomas,* 545 S.W.2d 469, 470 (Tex.Crim. App.1977). The court gave three reasons why pre-trial and pre-sentencing waivers must be rejected: (1) the right to appeal had not yet matured; (2) the defendant had no way of knowing with certainty what punishment would be assessed; and (3) the defendant could not anticipate errors that might occur during the plea proceeding. *Bushnell v. State,* 975 S.W.2d 641, 643 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). We discussed at length the ratio-nale behind this line of cases in *Bushnell* and *Alzarka. Bushnell,* 975 S.W.2d at 643; *Alzarka v. State,* 60 S.W.3d 203, 204 (Tex.App.-Houston [14th Dist.] 2001, pet. granted).

Recently, however, courts—including the Court of Criminal Appeals—have re-treated from the blanket prohibition con-tained in these cases. In *Blanco,* the Court of Criminal Appeals held that the concerns expressed in *Thomas, Dickey,* and *Townsend* were "less compelling in cases ... where the trial court follows the prosecution's sentencing recommendation." *Blanco v. State,* 18 S.W.3d 218, 219–20

---

1. Appellant originally was indicted for four separate events, but the State dismissed two of the indictments in return for her agreement to plead guilty.

(Tex.Crim.App.2000).[2] The *Blanco* court also noted one additional difference between the facts in *Blanco* and in *Thomas:* in *Thomas,* unlike *Blanco,* "the defendant did not bargain for a sentencing recommendation ... in exchange for his waiver of the right to appeal." *Id.* at 220. This Court extended the *Blanco* reasoning to a different plea bargain situation in *Alzarka. Alzarka,* 60 S.W.3d at 204–05. There, we held that a pre-trial waiver of appeal was binding because the defendant and the prosecution bargained for a sentencing recommendation in exchange for the defendant's waiver of appeal. *Id.* at 205–06. By this agreement, the defendant knew with certainty what punishment he would receive if the court chose to follow the plea. *Id.* And, before the court accepted his plea, it was required to tell him if it would follow the plea. In short, the defendant would know if the court would not give him what he bargained for. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(2) (Vernon Supp.2002). If the court did not accept the plea, the defendant could choose to withdraw it. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(2). Thus, we concluded that, when a defendant entered a negotiated plea with a recommendation for punishment before trial, a defendant could waive his right to appeal. *Alzarka,* 60 S.W.3d at 204–06.

This case, however, is different from *Alzarka* and from *Blanco.* Here, appellant reached a plea agreement only as to the number of indictments that would be presented to the court. There were four indictments; the State agreed to dismiss two. No agreement was made as to punishment. Thus, here, the protection afforded by article 26.13(a)(2)—which re-

quires the trial judge to tell the defendant if the judge will follow the plea agreement—is insufficient. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(2). Here, even if the judge told appellant she intended to follow the plea agreement, appellant still would not know what punishment she would be given. This dilemma falls squarely within *Thomas* and *Townsend* and the concerns expressed in those opinions. *Thomas,* 545 S.W.2d at 470; *Townsend,* 538 S.W.2d at 420. It also is not the situation found in *Blanco.* There a jury had already convicted the defendant and the only question was punishment. Since the defendant knew what his punishment would be if the court accepted the bargain, the prohibitions of *Thomas* and *Townsend* were "less compelling." *Blanco,* 18 S.W.3d at 219–20.

In short, this case is like *Townsend* and *Thomas.* It is not like *Blanco.* Therefore, here, unlike *Blanco,* the prohibitions are not "less compelling." We hold that appellant's waiver of her right to appeal was ineffective because it was made before trial and without an agreement as to punishment. Because appellant did not waive her right to appeal knowingly and voluntarily, we will address her other issues.

## II. Ineffective Assistance of Counsel

Both the United States and Texas Constitutions guarantee an accused the right to effective assistance of counsel. U.S. CONST. AMEND. VI; TEX. CONST. ART. I, § 10; *see also* TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1977). For counsel to be ineffective at trial, appellant must show that his counsel's representation fell below an objective standard of reasonableness, and that but for counsel's unprofessional

---

**2.** Almost fifteen years before *Blanco,* the Court of Criminal Appeals held that a notice of appeal is effective, even if given prematurely. *See Panelli v. State,* 709 S.W.2d 655, 657 (Tex.Crim.App.1986). Consequently, since then, the concept that the appeal had not yet matured was no longer an issue.

errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986).

Appellant must prove the ineffectiveness of trial counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). In doing this, appellant must overcome the strong presumption that counsel's conduct is within the wide range of professional assistance. *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052; *Thompson*, 9 S.W.3d at 813. A claim of ineffective assistance of counsel must be firmly founded and affirmatively demonstrated in the record. *Thompson*, 9 S.W.3d at 813–14. The record is best developed by a collateral attack, such as a motion for new trial. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App.1998); *Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.-Houston [1st. Dist.] 1994, pet. ref'd).

 One example of ineffective assistance of counsel is an attorney-client conflict of interest. "In cases where the appellant is claiming ineffective assistance of counsel due to a conflict of interest, the mere claim of conflict is insufficient to disaffirm a criminal conviction." *Pina v. State*, 29 S.W.3d 315, 317 (Tex.App.-El Paso 2000, pet. ref'd). To preserve error, the defendant should object to the conflict during trial. Nevertheless, a defendant who did not object can still prove ineffective assistance of counsel if she shows an *actual* conflict that presented an adverse effect "on specific instances of the attorney's performance." *Pina*, 29 S.W.3d at 317 (citing *Howard v. State*, 966 S.W.2d 821, 826 (Tex.App.-Austin 1998, pet. ref'd)). Only when a defendant shows that her counsel actively represented conflicting interests will she be able to lay a constitutional predicate for ineffective assistance of counsel. *See Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Possible conflict is not sufficient. *See id.* Actual conflict exists if "counsel is required to make a choice between advancing the client's interest in a fair trial or advancing other interests to the client's detriment." *Pina*, 29 S.W.3d at 317–18.

Appellant argues she received ineffective assistance of counsel because her attorney represented her in the criminal case and represented her father in the civil Child Protective Services' case. She argues that because her attorney was attempting to defend her against accusations of serious injury to her children, while at the same time representing her father, John Talbott, in his request for visitation rights, an actual conflict existed.[3] Appellant argues that the simultaneous legal representation of appellant's father in the civil case and appellant in the criminal case establishes conflict of interest and ineffective assistance of counsel.

However, appellant must show more than common representation; she must prove that her attorney took actions that were detrimental and adverse to her. She did not show this.

The record establishes that John Talbott and appellant were on the same side. Appellant's attorney testified that his representation for John Talbott in the family civil case was "a fall-back measure." He stated, "it was in case somehow she either didn't get access or they were going to be denied access in the future." It also ap-

---

**3.** Appellant's criminal attorney, Andrew McGee, was only assigned to the appellant for the criminal trial; appellant was assigned a different lawyer for her civil custody case.

Appellant's father initially asked McGee to file an intervention for him, but then later retracted that request.

pears from the record that an intervention—had it been filed—would have been to obtain access, not custody, to his grandchildren.

Because we find no actual conflict between appellant and John Talbott, no need arose for appellant's attorney to obtain an express waiver in this case. We note, however, that a written waiver or a letter detailing the attorney's role in both cases would have been the better course of action. We overrule appellant's claim of ineffective assistance of counsel of this ground.

## III. Voluntariness of Plea

■ We now turn to appellant's claim that her plea was involuntary because she did not know her parental rights could be terminated if she entered the plea.

We will not find an intelligently made plea involuntary simply because the defendant "did not correctly assess every relevant factor entering into his decision." *State v. Vasquez*, 889 S.W.2d 588, 590 (Tex. App.-Houston [14th Dist.] 1994, no writ) (citing *Ex parte Evans*, 690 S.W.2d 274, 277 (Tex.Crim.App.1985)). The United States Supreme Court has indicated that a guilty plea is voluntary if the defendant is aware of the "direct consequences of his plea, unless the plea was induced by threats, misrepresentations, or improper promises." *Brady v. United States*, 397 U.S. 742, 756–57, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Vasquez*, 889 S.W.2d at 590. We will not find a guilty plea involuntary due to the appellant's lack of knowledge of a collateral consequence. *See Ducker v. State*, 45 S.W.3d 791, 795 (Tex.App.-Dallas 2001, no pet.).

In claiming that her plea was involuntary, appellant asks this Court to find that the potential loss of parental rights is a direct consequence of a guilty plea. She asks us to hold that a defendant should be admonished about this possibility.

As noted earlier, a plea is considered voluntary if the defendant was made fully aware of the direct consequences of the plea. *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex.Crim.App.1999) (citing *Brady*, 397 U.S. at 755, 90 S.Ct. 1463). "There are numerous relevant consequences of pleading guilty to a felony which are not included in the admonishments: employment difficulties and restraints, ineligibility to vote, ineligibility for jury service, restriction on travel and others." *Vasquez*, 889 S.W.2d at 590 (citing *United States v. Banda*, 1 F.3d 354, 356 (5th Cir.1993)). In *Jimenez*, the Court of Criminal Appeals included a definition of "direct" and "collateral." "A consequence has been defined as 'direct' [when] it is 'definite, immediate and largely automatic.'" *Jimenez*, 987 S.W.2d at 889 n. 5 (citing *United States v. Kikuyama*, 109 F.3d 536, 537 (9th Cir. 1997) (citations and internal quotations omitted)). "A consequence has been defined as 'collateral' [when] 'it lies within the discretion of the court whether to impose it,' or [when] 'its imposition is controlled by an agency which operates beyond the direct authority of the trial judge.'" *Id.* at n. 6 (citing *Kikuyama*, 109 F.3d at 537 (citation and internal quotations omitted)).

Applying these definitions to this case, clearly the consequences are collateral. Termination of appellant's parental rights was not within the criminal district court's authority, much less within her discretion. Additionally, the criminal district court did not have authority over the family district court that ultimately decided—in its discretion—to terminate parental rights.

In summary, appellant was represented by counsel. She was told the trial judge was considering the full range of punishment. She was given the admonishments

required. She testified at the hearing on her motion for new trial that she understood what she was told, and that she was not told she would be able to keep her children. We hold that (1) appellant's plea was not induced by threats, misrepresentations, or improper promises, (2) the parental consequences of appellant's plea were collateral consequences, and (3) appellant's plea was voluntary.

## IV. Motion for New Trial

The trial court has discretion to grant or deny a motion for new trial. *Stults v. State,* 23 S.W.3d 198, 206 (Tex.App.-Houston [14th Dist.] 2000, no pet.). An appellate court does not substitute its opinion for this decision, but decides whether the trial court's decision was an abuse of discretion. *Id.*

We have already held that appellant did not establish ineffective assistance of counsel or the involuntariness of her guilty plea. These were the reasons appellant gave for requesting a new trial. Having overruled them, we hold that the trial court did not abuse its discretion in denying the motion for new trial.

For the reasons given, we overrule points one through six and affirm the trial court's judgment.

BRISTER, C.J., concurring.

SCOTT BRISTER, Chief Justice, concurring.

The parties here signed an agreement. The State dismissed two charges of child abuse against appellant; in return, she pleaded guilty to two others *and* agreed not to appeal. Having obtained what she bargained for, she now appeals anyway.

A defendant in a noncapital case may waive any rights secured by law. See Tex.Code Crim. Proc. Ann. art. 1.14(a). That includes the right to appeal. *See*

*Blanco v. State,* 18 S.W.3d 218, 220 (Tex. Cr.App.2000).

Nevertheless, for many years the Court of Criminal Appeals disregarded waivers of appeal, citing three reasons: (1) the right to appeal had not yet matured, (2) the defendant could not know what errors would occur at trial, and (3) the defendant could not know what sentence would be assessed. *See Ex parte Townsend,* 538 S.W.2d 419, 420 (Tex.Cr.App.1976). The first has been abrogated by amendments to the appellate rules. See Tex.R.App. P 27.1(b) (allowing prematurely filed notices of appeal). The second does not apply to negotiated pleas, as that plea *is* the "trial." *See Alzarka v. State,* 60 S.W.3d 203, 205–06 (Tex.App.-Houston [14th Dist.] 2001, pet. granted). The third does not apply if the trial judge assesses the punishment that the parties agreed to in their bargain. *See Blanco,* 18 S.W.3d at 220.

In this case, there was no agreement on punishment, so it was tried to the court. But that should not make appellant's waiver unenforceable. While she could not know what errors might occur during the punishment phase, she certainly did as to the guilt phase, since her plea put an end to that part of her trial. Thus, if her waiver is limited to the guilt phase, there is no reason to be concerned that she is waiving an error she did not know about.

And while appellant did not know what punishment she would receive, that was not a part of her bargain. The defendants in *Townsend, Blanco,* and *Alzarka* bargained for reduced sentences; their "deal" was lost if sentence was not reduced. To borrow from contract law, there was a failure of consideration if punishment was not as the parties agreed.

But knowing her sentence was not a part of appellant's bargain—she bargained not for a reduced *sentence* but a reduced

number of *charges.* When the State dismissed those charges, she got what she bargained for, whatever sentence she eventually received. *Townsend's* requirement that she know her sentence should not apply when a reduced sentence was not a part of her bargain. I would apply the concept behind *Townsend* (failure of consideration), rather than the specific test it set out for a different type of bargain.

Although appellant waived all appeal in her agreement, *Townsend* appears to limit that waiver to errors during the guilt phase, as errors during the punishment phase were yet to occur. *Compare United States v. Richards,* 302 F.3d 58, 71–72 (2d Cir.2002) (considering appeal when defendant waived right to appeal plea but retained right to appeal sentencing). Because all of her points on appeal relate to her plea rather than her punishment, I would dismiss her appeal based on her waiver.

Thus, I would hold that appellant has received the benefit of her plea bargain, and waived any appeal from her guilty plea. Because the panel instead affirms the trial court's judgment, I concur in the result only.