# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00182-CR

**Anthony O'Neal, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 66992, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following his plea of guilty to the offense of murder, appellant Anthony O'Neal was convicted of that offense and sentenced to life imprisonment, which, the district court ordered, would be served consecutively following another life sentence that O'Neal had received upon his prior conviction for the offense of aggravated sexual assault with a firearm. In a single issue on appeal, O'Neal asserts that the district court abused its discretion in denying his motion for new trial, which was based on O'Neal's claim that his guilty plea was involuntary and should be withdrawn. We will affirm the judgment of the district court.

## BACKGROUND

O'Neal was charged with murdering Paul Caldera by shooting him with a firearm. Prior to trial, O'Neal had signed a judicial confession and a "waiver of jury and agreement to stipulate upon a plea of guilty." The waiver indicated that O'Neal understood the charges against

him, the consequences of pleading guilty, and the rights he was waiving by pleading guilty. The waiver further indicated that O'Neal was mentally competent, had discussed the facts of the offense with counsel, and was satisfied with the investigation of the facts and the representation provided by counsel. The waiver also included the following statement: "My decision to enter a plea of guilty before the court is my free and voluntary decision made with knowledge of the facts of the case for and against me and represents my free choice between the courses of action available to me." In addition to being signed by O'Neal, the waiver was also signed by counsel, the prosecutor, and the district court.

Prior to accepting O'Neal's guilty plea, the district court admonished O'Neal on the consequences of his plea and asked him numerous questions relating to whether he understood those consequences. Because the district court's admonishments and O'Neal's responses are relevant to our inquiry into the voluntariness of his plea, we reproduce most of the exchange below:

THE COURT:        Sir, are you Anthony Wayne O'Neal?

THE DEFENDANT: Yes, ma'am.

THE COURT:        How old are you?

THE DEFENDANT: Forty-one.

THE COURT:        Are you a United States citizen?

THE DEFENDANT: Yes, ma'am.

THE COURT:        Mr. O'Neal, do you read, write and speak the English language?

THE DEFENDANT: Yes, ma'am.

2

THE COURT: You're in court this morning because you're charged by indictment with the offense of murder.

THE DEFENDANT: Yes, ma'am.

THE COURT: You understand, sir, that that is a first-degree felony. It carries a range of punishment of not less than 5 nor more than 99 years or life in the Institutional Division of the Texas Department of Criminal Justice. And it may include a fine of up to $10,000.

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that today's your trial?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you ready to proceed?

THE DEFENDANT: Yes, ma'am.

THE COURT: Mr. O'Neal, I have papers in front of me that I understand you signed. Did you read and understand all of these papers?

THE DEFENDANT: I didn't actually read them, but he told me what they were.

THE COURT: You've been over them with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you were able to talk to him about what's contained in these papers?

THE DEFENDANT: Yes, ma'am.

THE COURT: And he answered any questions that you might have about these documents?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand, Mr. O'Neal, that you have the right to have a jury trial?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   You can have 12 people come in and listen to the evidence, and the jury can decide if you're guilty or not guilty. Do you want a jury trial?

THE DEFENDANT:   No, ma'am.

THE COURT:   Do you understand what you're giving up?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   Also, sir, you have an absolute right to remain silent, and you do not have to make any statements in these proceedings.

THE DEFENDANT:   Yes, ma'am.

THE COURT:   Do you understand that you can require the State to bring their witnesses into court to testify against you, and you and your attorney have the right to confront and cross-examine those witnesses?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   Mr. O'Neal, you signed papers telling me that you want to give up all of those rights. Is that what you want to do? Give up your right to a jury trial.

THE DEFENDANT:   Oh, yes, ma'am. Yes, ma'am.

THE COURT:   Give up your right to remain silent.

THE DEFENDANT:   Yes, ma'am.

THE COURT:   And give up your right to confront and cross-examine the witnesses.

THE DEFENDANT:   Yes, ma'am.

THE COURT:   That is what you want to do, sir?

THE DEFENDANT:   Yes, ma'am.

THE COURT:        [Counsel], you concur in those waivers?

[COUNSEL]:        I do, ma'am.

. . . .

THE COURT:        I'll approve the waivers.  Mr. O'Neal, I have another paper that is a judicial confession.  Do you understand that when this piece of paper is admitted into evidence, you've given the evidence against yourself in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Also, sir, I have a document that is entitled a Disclosure of Plea Recommendation.  And I understand that you have no agreements with the State regarding the outcome or what the punishment's going to be in this case.

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Is that true?

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Do you have—if you do have agreements with the state in this case, Mr. O'Neal, I don't know about them and I'm not bound by them.

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Do you understand that this leaves the full range of punishment available to the court?

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Also, sir, there is—the State has filed a motion to accumulate sentences in this case.  Do you understand that?

THE DEFENDANT:  Not actually.

5

THE COURT:          Pardon?

(Sotto voce discussion between the defendant and his attorney)

THE DEFENDANT: Yes, ma'am.

THE COURT:          You understand that the state has filed a motion to accumulate. They're asking that these—this sentence—any sentence in this case be accumulated or stacked with the sentence that you received in a case out of McLennan County?

[COUNSEL]:          We understand, Your Honor.

THE COURT:          Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT:          I'm just telling you that the State's motion has been filed. I'm taking no action on it at this point, but you understand it has been filed?

THE DEFENDANT: Yes, ma'am.

THE COURT:          All right. And you understand what that would mean?

THE DEFENDANT: Yes, ma'am.

THE COURT:          Also, sir, this is a case that alleges a deadly weapon, a firearm.

THE DEFENDANT: Yes, ma'am.

THE COURT:          And do you understand what a plea of guilty and a finding of guilty would mean regarding any possibility for parole in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT:          All right. Understanding all those things, do you still want to proceed?

THE DEFENDANT: Yes, ma'am.

6

THE COURT: Mr. O'Neal, do you believe that you are mentally competent?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand what we're doing?

THE DEFENDANT: Yes.

THE COURT: Have you been able to talk with your attorney about the allegations in this indictment?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you also been able to talk to him about the facts of this case and any possible defenses that you might have?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you been satisfied with the representation that he's provided for you in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: [Counsel], do you believe your client is mentally competent?

[COUNSEL]: I do, ma'am.

THE COURT: Mr. O'Neal, to the charge of murder alleged to have occurred in Bell County, Texas, on August the 22nd of 2010, how do you plead, sir? Are you guilty or not guilty?

THE DEFENDANT: Not guilty.

[COUNSEL]: Not guilty?

(Sotto voce discussion between the defendant and his attorney)

THE COURT: Sir, you have the choice of pleading guilty or not guilty. When you plead guilty, you're telling me that you did commit this offense. When you plead not guilty, you're telling me that you did not commit this offense. Do you understand the difference?

7

THE DEFENDANT:   Yes, ma'am.

THE COURT:   All right.  It's up to you how you plead.  Do you plead guilty or not guilty?

(Sotto voce discussion between the defendant and his attorney)

All right.  You're pleading not guilty, sir?

[COUNSEL]:   I assume that to be the case, Your Honor.

THE DEFENDANT:   Could I have a minute with my lawyer?

THE COURT:   Sure.  You may.

(Sotto voce discussion between the defendant and his attorney)

We're going to take a recess for just a few moments.

(Recess from 10:04 a.m. to 10:27 a.m.)

66992, State of Texas versus Anthony O'Neal.  We're in the presence of the defendant and the attorneys.  Mr. O'Neal, you had asked me for an opportunity to confer—to talk with your attorney.  Have you been able to do that?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   Do you want to proceed?  Do you want to go forward at this time?

THE DEFENDANT:   Yes.

THE COURT:   All right.  When we recessed, sir, you had pled not guilty to the charge of murder as alleged in the indictment.  Is that what you wish to plead?

THE DEFENDANT:   No, ma'am.  I'm changing it.

THE COURT:   What is your plea, sir?

THE DEFENDANT:   Guilty.

8

THE COURT: Are you pleading guilty freely?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty voluntarily?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone promised you something in order to get you to plead?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone threatened you, or forced you, or done something to you to make you plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Mr. O'Neal, did you commit this offense?

THE DEFENDANT: Yes—yes, ma'am.

THE COURT: Pardon?

THE DEFENDANT: Yes, ma'am.

THE COURT: [Counsel], do you concur in your client's plea?

[COUNSEL]: I do, ma'am.

THE COURT: Mr. O'Neal, have you had all your questions and concerns addressed by [counsel]? Have you had time to talk with him this morning?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you telling me that you're guilty of this offense, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: At this time I find the defendant is competent, he understands the nature and consequences of his plea, his plea is free and voluntary.

9

The State then proceeded to offer O'Neal's judicial confession into evidence. Before admitting it, the district court again admonished O'Neal, "When this piece of paper comes into evidence, sir, you have given evidence against yourself." O'Neal responded, "Yes, ma'am." The district court then asked O'Neal, "Do you understand that?" O'Neal nodded his head in the affirmative and responded, "Yes, ma'am." The district court further inquired, "Is that what you want to do?" O'Neal again responded, "Yes, ma'am." The district court then found the evidence sufficient to support a finding of guilt but withheld such a finding, ordered a presentence investigation report, and reset the case for sentencing.

At the punishment hearing, defense counsel advised the district court that O'Neal wanted to withdraw his guilty plea at that time. Counsel explained:

> But [O'Neal] does want to advise the court he is requesting permission to withdraw his plea because he felt that the consequences were not explained to him adequately for him to make an informed decision. My memory says I know that I explained to him in detail in the conference room, and I'm almost—I'm very positive that the court explained to him the last hearing we had in this courtroom.
>
> . . . .
>
> Mr. O'Neal did plea. He was admonished by the court. He was advised of the possible punishment range. And I would further advise the court that Mr. O'Neal was not presented to this court on this case until he had concluded a matter in Williamson County, Texas, wherein in the month of October, he pled guilty to aggravated sexual assault with a firearm, was convicted and sentenced to life in prison in that case. And so when he got here, he'd already been through the court. He'd already received a life sentence. He already knew the ramifications of that. And I simply reiterated that this is the same or similar sentence. So my concern now is, Your Honor, at this moment, Your Honor, is that, Mr. O'Neal wants to withdraw a plea that he fully understands, he's just not comfortable with.

The State responded as follows:

Obviously, Your Honor—and I think the court will recall the proceedings back on October 31st, they were fairly lengthy. Mr. O'Neal was admonished fully, not only as to the range of punishment but also in regard to the motion to accumulate sentence—sentences. The court took a great deal of time explaining to Mr. O'Neal all the ramifications of that plea.

And as [counsel] points out, it had not been very long since Mr. O'Neal had entered a plea to a first-degree felony with a guaranteed life sentence. So he knew what he was doing. There's not any question about him not knowing the range of punishment and that kind of thing. So he's pled guilty. It's time for sentencing as far as the State's concerned.

The district court then gave O'Neal an opportunity to explain why he wanted to withdraw his plea. O'Neal claimed that counsel was lying and that counsel had not adequately explained to him the consequences of his plea. O'Neal also asserted that "I'm not no murderer" because he "didn't have no intent to kill nobody." The district court denied O'Neal's request to withdraw his plea at that time and continued the punishment hearing. After hearing evidence, the district court found O'Neal guilty of murder, made an affirmative finding that a deadly weapon had been used in the commission of the offense, sentenced O'Neal to life imprisonment, and granted the State's motion to cumulate that sentence with the life sentence that O'Neal had already received for his prior conviction for the offense of aggravated sexual assault.

Subsequently, O'Neal filed a pro se motion to withdraw his guilty plea, which the district court treated as a motion for new trial. The district court granted a hearing on the motion. At the hearing, the district court heard testimony from O'Neal, who was now represented by different counsel, and O'Neal's trial counsel. O'Neal, in his testimony, claimed that he was not mentally competent at the time of his plea because, at that time, he was taking medication for depression. He also asserted that he had pleaded guilty out of fear that if he did not do so, the "mafia" would

11

retaliate against him. Moreover, according to O'Neal, trial counsel had not adequately explained to him the consequences of his guilty plea. In particular, O'Neal focused on his lack of understanding of the State's motion to cumulate sentences:

> Q. All right. Did you understand that the sentence in this case would be stacked upon the sentence in the McLennan County case?
>
> A. No, because when I—when I—when the judge asked me to—when I plead guilty, and we went in the back room right there, he told me that he had already talked to the DA about getting this ran concurrent. He said I wasn't going to receive a life sentence. We went right there in the back room right there.
>
> Q. You did not believe you were going to receive a life sentence?
>
> A. No, sir, because he say I already had a life sentence and whatever time I get here was going to be ran concurrent with the time in McLennan County.
>
> Q. If you had known this sentence was going to be stacked upon the McLennan County sentence, would you entered a plea of guilty in this case?
>
> A. No, sir. Cause initially I said no when the judge asked me.
>
> . . . .
>
> Q. At what point did you realize you had entered a plea of guilty and you wanted to withdraw that plea of guilty?
>
> A. Right after when the judge gave me—said the life—said the life sentence be ran consecutive.
>
> Q. So is the truth of the matter the fact that you want a new sentence in this case because you don't like that you got life stacked upon the McLennan County case?
>
> A. Yes, sir. . . .

On cross-examination, the State elicited the following additional testimony concerning the sentencing issue:

> Q. Now, you talked about the sentence being stacked. You remember the judge telling you about that?
>
> A. No, my lawyer—my lawyer told me that they wouldn't—they wouldn't—they wouldn't be ran consecutive.
>
> Q. Do you remember the judge specifically saying that the state has filed a motion to accumulate sentences in this case, do you understand that?
>
> A. No. He—he just told me what—
>
> Q. No, no. When you were in here back on October the 31st, that judge right there asked you if you understood that we had filed a motion to accumulate sentences. Do you remember that?
>
> A. No, I just did what he told me. He told me to say yes and told me to say no.
>
> Q. Oh, okay. Right here where the court says there is—the state has filed a motion to accumulate sentences in this case, do you understand that. What did you say?
>
> A. Not actually.
>
> . . . .
>
> Q. You said not actually. And so the judge continued to talk to you. And she said you understand that the state has filed a motion to accumulate. They're asking that this sentence, any sentence in this case, be accumulated or stacked with the sentence that you received in the case out of McLennan County. You can't be any more plain than that, can you, Mr. O'Neal.
>
> A. I just did what I was told.
>
> Q. Okay. And she asked you if you understood that. And you said yes.
>
> A. That's what he told me to say, yes.

Q. And she's saying, I'm just telling you it's been filed. I'm not ruling on it right now because we still got to have a sentencing phase. And that sentencing phase was how much longer down the road? Do you remember when the sentence was pronounced? I mean, we talked about it just a minute ago.

A. I—I wrote [counsel], I wrote him letters and I told the lady when she came—

Q. Let's try answering what I asked you. Do you remember when you were actually sentenced?

. . . .

A. Yeah, yeah. December. Late December.

Q. But you had basically six weeks to say, I didn't know what stack meant? I didn't know what was going on. I didn't really mean to plead guilty in McLennan County, right? You had that six weeks, didn't you?

A. I told the lady that. The lady the judge sent with the paperwork. I told her.

Q. As [current defense counsel] said, really the problem was, is back on December 19th, you just weren't happy with the sentence you got, right?

A. That—that ain't it. That's what—Mr. Harris told me to plead guilty. . . . I kept telling him back there, I say I'm not guilty. I ain't murdered nobody. And he kept telling me, he said, Mr. O'Neal, I talked to the DA. He say—he say just do what I tell you to do. I'm your lawyer. We was right there in that room back there (indicating). And I just did what I was told. I ain't never been in this thing before. You know, like—I—I don't know what to do.

Trial counsel testified that he had discussions with O'Neal concerning O'Neals rights and also O'Neal's desire to "try to work out some kind of plea." In counsel's opinion, O'Neal had been mentally competent at the time of his guilty plea and had entered his plea freely and voluntarily. Counsel also provided specific testimony as to his discussions with O'Neal regarding the State's motion to cumulate sentences:

14

Q.      Did you, at any time, advise Mr. O'Neal that—or guarantee to Mr. O'Neal that his sentence in this case would serve concurrently with his sentence in McLennan County?

A.      There was extensive discussion when [the prosecutor] filed the motion to stack. And I explained to Mr. O'Neal what that possibly could mean. But at the time that it was filed, the court had not ruled on it. So he was aware from the day he entered his plea that the state had an intention to stack. And I assured him that I would do all in my power to oppose that, but it would only be through argument. I had no other means available to me to prevent the court from making a ruling.

Q.      And so in summary, you did not promise him it would be served concurrently?

A.      I never—I said that would [be] the hope, but I have no way of guaranteeing that.

At the conclusion of the hearing, the district court denied O'Neal's motion for new trial. This appeal followed.

**STANDARD OF REVIEW**

An appellate court reviews a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). An abuse of discretion occurs when the trial court acts in an unreasonable or arbitrary manner. *Id*. In reviewing the trial court's ruling, we do not substitute our judgment for that of the trial court. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Rather, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Holden*, 201 S.W.3d at 763; *Charles v. State*, 146 S.W.3d 204, 208

15

(Tex. Crim. App. 2004). At a hearing on a motion for new trial, the trial judge is the trier of fact and her findings should not be disturbed unless an abuse of discretion has been demonstrated. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990); *Clarke v. State*, 305 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

The motion for new trial in this case concerned O'Neal's request to withdraw his guilty plea. A defendant may withdraw his plea as a matter of right, without assigning a reason, until judgment is pronounced or the case is taken under advisement by the trial court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). If, on the other hand, the defendant decides to withdraw his plea after the trial court has taken the case under advisement or pronounced judgment, which is what occurred here, the withdrawal of such plea is within the sound discretion of the trial court. *Jackson*, 590 S.W.2d at 515; *Jagaroo*, 180 S.W.3d at 802. To show that the trial court abused its discretion when it refused to allow appellant to withdraw his plea, an appellant must show that the trial court's ruling lies outside the zone of reasonable disagreement. *Jagaroo*, 180 S.W.3d at 802.

## ANALYSIS

In his sole issue on appeal, O'Neal asserts that the district court should have granted his new trial on the ground that his plea was not voluntary and therefore should be withdrawn. According to O'Neal, his plea was involuntary primarily because his trial counsel had erroneously informed him that his sentence for murder would not run consecutively with the sentence for his prior conviction for the offense of aggravated sexual assault. In response, the State argues that the

16

record reflects that prior to entering his plea, O'Neal was advised by counsel and admonished by the district court that his sentences could be stacked. According to the State, this admonishment, along with the other information and admonishments that were provided to O'Neal, demonstrate the voluntariness of his plea.

"A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). "Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily." *Id*. "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Id*. (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)). In considering the voluntariness of a guilty plea, the court should examine the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily. *Id*. "A defendant may still raise the claim that his plea was not voluntary; however, the burden shifts to the defendant to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm." *Id*. A defendant who attests, when he enters his plea of guilty, that he understands the nature of his plea and that his plea is voluntary, has a heavy burden on appeal to show that his plea was involuntary. *See Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

17

In this case, viewing the evidence in the light most favorable to the district court's ruling, the record as a whole supports an implied finding by the district court that O'Neal's plea was voluntary. At the plea hearing, the district court admonished O'Neal that he had a right to a jury trial, the right not to incriminate himself, the right to confront the witnesses against him, and that he would be giving up those rights by pleading guilty. O'Neal affirmed to the district court that he understood those rights, that he knew he would be giving them up, and that is what he wanted to do. When, at one point during the plea hearing, O'Neal initially pleaded "not guilty," the district court provided O'Neal with an opportunity to speak with trial counsel for approximately twenty minutes, and, following that discussion, again asked O'Neal how he wanted to plead. This time, O'Neal testified that he was pleading "guilty," and he affirmed to the district court that he was doing so freely and voluntarily. And, when the district court subsequently asked O'Neal if anyone had promised him something, or threatened, forced, or done something to him to make him plead guilty, O'Neal answered, "No, ma'am." Only after all of the above-summarized admonishments, inquiries, and discussions with counsel did the district court accept O'Neal's guilty plea.

Regarding the sentencing issue, the record reflects that O'Neal was admonished by the district court as to the full range of punishment, including the possibility of a life sentence, and was also admonished by the district court as to the State's filing of a motion to cumulate sentences. When O'Neal responded that he did "not actually" understand that a motion to cumulate had been filed, the record reflects that there was a discussion between O'Neal and trial counsel. Following that discussion, the district court clarified that the State was "asking that these—this sentence—any sentence in this case be accumulated or stacked with the sentence that you received in a case out of McLennan County." When asked if he understood this, O'Neal answered, "Yes." And, when the

18

district court further inquired as to whether O'Neal "understood what that meant," O'Neal again answered, "Yes." Although O'Neal testified at the new-trial hearing that counsel had informed him that his sentences would not be stacked, the district court was free to disbelieve O'Neal's testimony and instead credit the testimony of trial counsel, who testified that there was "extensive discussion" between himself and O'Neal regarding the motion to cumulate and "what that possibly could mean," and that he had advised O'Neal that there was "no way of guaranteeing that" the sentences would not be stacked. Moreover, even if counsel had somehow created the expectation that the sentences would not be stacked, this would not render O'Neal's plea involuntary. *See West v. State*, 702 S.W.2d 629, 633 (Tex. Crim. App. 1986) ("[T]he plea is not involuntary just because the sentence exceeded what appellant expected, even if the expectation was raised by his attorney."); *State v. Collazo*, 264 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("A plea is not involuntary simply because the defendant 'did not correctly assess every relevant factor entering into his decision.'" (quoting *Talbott v. State*, 93 S.W.3d 521, 526 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

The district court was also free to disbelieve O'Neal's other claims regarding the voluntariness of his plea, including that counsel did not spend enough time explaining the consequences of his plea with him, that O'Neal was doing nothing more at the plea hearing than repeating what counsel had told him to say, that his plea was influenced by the medication he was taking, and that he had pleaded guilty out of fear of retaliation by the mafia. These claims were either contradicted by trial counsel's testimony, or based solely on O'Neal's self-interested testimony at the new-trial hearing, and the district court, as the sole trier of fact, was entitled to find O'Neal's testimony not credible. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001) (no abuse

19

of discretion in overruling motion for new trial "where there is conflicting evidence on an issue of fact"); *Shanklin v. State*, 190 S.W.3d 154,166-67 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007) ("The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted.").

Based on all of the evidence summarized above, we cannot conclude that the district court abused its discretion in finding that O'Neal had failed to meet his "heavy burden" to show that his guilty plea was involuntary and should be withdrawn, and in denying the motion for new trial on that ground. The district court's ruling is reasonably supported by the record and is not outside the zone of reasonable disagreement. Accordingly, we overrule O'Neal's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: July 10, 2013

Do Not Publish