**Opinion issued November 15, 2018**



In The

# Court of Appeals

For The

## First District of Texas

————————————

**NO. 01-18-00150-CR**

**NO. 01-18-00151-CR**

———————————

**DANIEL LEE HARRISON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1369904 and 1370009**

## MEMORANDUM OPINION

After appellant, Daniel Lee Harrison, without an agreed punishment

recommendation from the State, pleaded guilty to the offenses of aggravated assault

of a family member[1] and aggravated assault,[2] the trial court assessed his punishment at confinement for twenty-five years and twenty years, respectively. And it ordered that the sentences run concurrently. In his sole issue, appellant contends that the trial court erred in accepting his guilty pleas because he entered them involuntarily.

We affirm.

## Background

A Harris County Grand Jury issued a true bill of indictment, alleging that appellant, on or about November 26, 2012, "did then and there unlawfully, intentionally and knowingly cause serious bodily injury to [the first complainant], a member of [appellant's] family[,] . . . by shooting [her] with a deadly weapon, namely, a firearm." A Harris County Grand Jury also issued a true bill of indictment, alleging that appellant, on or about November 26, 2012, "did then and there unlawfully, intentionally and knowingly threaten [the second complainant] with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm."

On February 2, 2017, appellant's trial counsel filed, in each trial court case, a motion for a psychiatric examination to determine appellant's competency to stand

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b)(1) (Vernon 2011); *see also* TEX. FAM. CODE ANN. § 71.003 (Vernon 2014) (defining family); appellate cause no. 01-18-00150-CR; trial court cause no. 1369904.

[2] *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b); appellate cause no. 01-18-00151-CR; trial court cause no. 1370009.

2

trial, which the trial court granted. Dr. Barbara Martinez, a psychologist with the Harris Center for Mental Health and IDD, then examined appellant and opined that he "possesse[d] sufficient present ability to consult with [his] defense attorney with a reasonable degree of rational understanding, and he possesse[d] a rational as well as [a] factual understanding of the proceedings against him." And he was competent to stand trial.

On December 4, 2017, appellant signed and filed, in each trial court case, a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," in which he pleaded guilty and admitted to the acts alleged in each indictment. Appellant's trial counsel also signed the "Waiver[s] of Constitutional Rights, Agreement[s] to Stipulate, and Judicial Confession[s]," affirming that he believed that appellant had entered his guilty pleas knowingly, voluntarily, and after a full discussion of the consequences of the pleas. Trial counsel also affirmed his belief that appellant was competent to stand trial.

Further, appellant signed "Admonishments,"[3] in each trial court case, informing him that he had been indicted for the felony offenses of aggravated assault of a family member and aggravated assault and of the punishment range for the offenses. And appellant signed "Statements and Waivers of Defendant,"[4] in each

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2018).

[4] *See id.*

3

trial court case, affirming that he was mentally competent, "underst[ood] the nature of the charge[s] against" him, understood the trial court's admonishments, understood the consequences of his guilty pleas, and had consulted with his trial counsel about the pleas. Further, appellant stated that he had "read the indictment[s]," "committed each and every element alleged" therein, and freely and voluntarily entered his guilty pleas.

At a plea hearing, the following exchange between the trial court and appellant occurred:

| | |
|---|---|
| THE COURT: | . . . You were charged by felony indictment . . . for aggravated assault of a family member. That is a first-degree felony that carries a range of punishment from 5 years up to 99 years or life, and up to a $10,000 fine.<br><br>. . . [Y]ou've also been charged by felony indictment of the offense of aggravated assault. That one is a second-degree felony, and carries a range of punishment from 2 years up to 20 years in prison, and a $10,000 fine.<br><br>How do you plead on both of these felony offenses, guilty or not guilty? |
| [Appellant]: | Guilty. |
| THE COURT: | Are you pleading guilty freely and voluntarily? |
| [Appellant]: | Yes, ma'am. |

THE COURT:    Has anyone forced you to plead guilty today?

[Appellant]:    No, Your Honor.

THE COURT:    As you know, we have a jury selected, and they have been impaneled, and they're waiting in the back room. Is this what you want to do?

[Appellant]:    No, ma'am.

THE COURT:    . . . So you are pleading guilty to both of these offenses?

[Appellant]:    Yes, ma'am.

THE COURT:    I'm asking if you're pleading guilty?

[Appellant]:    Yes, ma'am.

THE COURT:    Have you gone over both of these plea packets with your lawyer?

[Appellant]:    Yes, ma'am.

THE COURT:    Has he explained everything that is contained within these plea packets?

[Appellant]:    Yes, ma'am.

THE COURT:    Do you understand by pleading guilty today that you're giving up important rights which include[] releasing that jury and moving forward on these guilty pleas?

[Appellant]:    Yes, ma'am.

5

| | |
|---|---|
| THE COURT: | Okay. Is that your signature in the middle of this page underneath the waiver of rights? |
| [Appellant]: | Yes, ma'am. |
| THE COURT: | And on the second-degree, right here in the middle? |
| [Appellant]: | Yes, ma'am. |

The trial court then found that it had admonished appellant of the consequences of his pleas, appellant was mentally competent, and appellant's trial counsel was competent and had effectively represented him. Further, the trial court found sufficient evidence of appellant's guilt and that he had entered his guilty pleas freely, knowingly, and voluntarily after discussion with his trial counsel. The trial court admonished appellant of his legal rights, accepted his guilty pleas, and ordered a presentence investigation in each trial court case.

At the sentencing hearing, appellant testified that he had pleaded guilty to the felony offenses of aggravated assault of a family member and aggravated assault as alleged in the Harris County Grand Jury's indictments. He had previously discussed both of his trial court cases with his trial counsel, and his counsel was present at the time that he pleaded guilty. Appellant stated that he had pleaded guilty freely and voluntarily and he had pleaded guilty because he was guilty "and for no other reason." Appellant also explained that at the time that he pleaded guilty, the trial

court asked him certain questions about whether his pleas were given freely and voluntarily, and he had responded "[y]es."

On cross-examination, the following exchange took place between appellant and the State:

| | |
|---|---|
| [State]: | And who has pled guilty now to two aggravated felonies, correct? |
| [Appellant]: | Under duress, yes, ma'am. |
| [State]: | You pled guilty? |
| [Appellant]: | Yes, ma'am, I pled guilty under duress. |

When further questioned by his own counsel, appellant testified:

| | |
|---|---|
| [Appellant's Counsel]: | . . . [S]omehow this morning when you wanted to talk to me, you now want to withdraw you[r] plea of guilt? |
| [Appellant]: | Yes, sir. |
| [Appellant's Counsel]: | On both cases? |
| [Appellant]: | Yes, sir. |
| [Appellant's Counsel]: | And you mentioned just like you mentioned in testimony on cross-examination that you felt you were under duress? |
| [Appellant]: | Yes, sir. |
| [Appellant's Counsel]: | . . . What [does] duress mean to you? |
| [Appellant]: | To me it means being, like, stressed out, I mean, forced to do something |

7

under your own will due to stress, duress, anything along that line that it could be. I feel like it was stress. I suffer from major depression. I hung myself in 2005. I was in a coma, and I was diagnosed with major depression. And I do feel like I don't quite understand what's going on. And I also feel like me pleading guilty to this, and I'm innocent, it's like I'm straddling the fence. And it's like I know it's not right to try and get a less plea. And I'm being looked at like a criminal, you know, this and that, being disrespected by other family members. I mean, I feel like that would be the best bet right now.

[Appellant's Counsel]: Now, the procedure is you are entitled to a jury trial. You knew that; is that correct?

[Appellant]: Yes.

[Appellant's Counsel]: As a matter of fact . . . we were going to start the trial, we were in here in the room, and we selected jury?

[Appellant]: Yes, sir, we did.

[Appellant's Counsel]: And [a] jury of 12 that was going to sit in [the] jury box to be the trier of facts and listen to the evidence, and . . . decide whether the State ha[d] proven the case beyond a reasonable doubt; is that correct?

[Appellant]: Yes, sir.

8

[Appellant's Counsel]: And you knew that . . . that's what the jury does because you asked for a jury trial?

[Appellant]: Yes.

[Appellant's Counsel]: And so basically . . . at that point in time, you were pleading not guilty; is that correct?

[Appellant]: Yes.

[Appellant's Counsel]: And that's why you were asking for a jury trial?

[Appellant]: Yes.

[Appellant's Counsel]: . . . [But] when the jury [was] ready to be brought in to start the case, you decided you wanted to plead guilty; is that correct?

[Appellant]: Yes.

[Appellant's Counsel]: . . . [T]he procedure was this: You knew that . . . you could continue with the jury trial because the jury had already -- we selected members of the jury, and the [trial court] could call them in and sit them in the jury box, and we could continue the process. You knew that; is that correct?

[Appellant]: Yes.

. . . .

[Appellant's Counsel]: But . . . on that day, the [State] prepared the paperwork on both cases, and you and I sat down and went over

9

|                        | the paperwork.  And you signed and initialed the appropriate places in that paperwork; is that correct? |
| [Appellant]:           | Yes. |
| [Appellant's Counsel]: | And then after that was done, we went in front of the clerk who enter[ed] you in that.  You had a chance to read the paperwork, and you had any questions, and things of that nature; is that correct? |
| [Appellant]:           | Yes. |
| [Appellant's Counsel]: | And then she asked you how you pled.  And you said you were pleading guilty to the clerk; is that correct? |
| [Appellant]:           | Yes, sir. |
| [Appellant's Counsel]: | And then the last stage was we shuffled over in front of the [trial court], and . . . [it] ha[d] those plea papers in [its] hands, and [it] ask[ed] you a bunch of questions regarding whether it was freely and voluntarily given, your plea.  And just like you testified in cross-examination a while ago, you voluntarily pled guilty to the case involving you shooting [the first complainant], and also the other case threats on aggravated assault; is that correct? |
| [Appellant]:           | Under duress I pled guilty to that, yes, sir. |
| [Appellant's Counsel]: | Now -- and the trouble I have with under duress that you brought up this |

10

morning is that all these times that I went to the jail and the times that you and I talked and you came in the office and discussed the cases. We had an investigator appointed by the [trial court], so he could help us out to look for defenses and to help you in your defense. After all that, you finally came to the conclusion that you would rather plead guilty in front of the [trial court], and ask[] for [it] to assess proper punishment, including if [it] wanted to deferred adjudication; is that correct?

[Appellant]: On that day, I decided to plead guilty to that. But the other times, yes, sir, I said I was innocent the whole time.

[Appellant's Counsel]: Well, sure. And that's why you asked for a jury trial, right?

[Appellant]: Yes.

[Appellant's Counsel]: And we actually selected a jury?

[Appellant]: Yes.

[Appellant's Counsel]: And on day the jury was going to be brought in, you said you wanted to plead guilty instead of going to trial; isn't that true?

[Appellant]: Yes.

. . . .

[Appellant's Counsel]: And [the] other thing that caught my attention when you answered the questions for the [State], you said you

11

|  |  |
|---|---|
|  | pled guilty under threats. What kind of threats? |
| [Appellant]: | No, I said -- to me, that's my definition of duress. Threats, involuntarily, involuntarily statements, you know, admits this and that, along that line. I didn't say anything that I was threatened. That's just my definition. It doesn't mean that I was threatened. |
| [Appellant's Counsel]: | . . . I'm asking you, who threatened you to plead guilty? |
| [Appellant]: | I mean, I wasn't threatened, I was just misunderstood what I was signing. By being under duress, being stressed out, having to deal with these cases, like, 2012 has been so long it has taken a lot out of my life. . . . |

**Voluntariness of Guilty Pleas**

In his sole issue, appellant argues that the trial court erred in accepting his guilty pleas because he entered them involuntarily.

A guilty plea constitutes a waiver of three constitutional rights: (1) the right to a jury trial, (2) the right to confront one's accusers, and (3) the right not to incriminate oneself. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. *Id.* at 242–44, 89 S. Ct. at 1712–13; *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *see also* TEX.

12

CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2018). To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

In examining the voluntariness of a guilty plea, we examine the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 196–97 (Tex. Crim. App. 1998). When the record reflects that a defendant was duly admonished by the trial court before entering a guilty plea, it constitutes a prima facie showing that the plea was both knowing and voluntary. *Id.*; *Rios v. State*, 377 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The burden then shifts to the defendant to show that he entered his plea without understanding the consequences of his actions and was harmed as a result. *Martinez*, 981 S.W.2d at 197; *Rios*, 377 S.W.3d at 136. A defendant who attests at a plea hearing that his plea is voluntary bears a heavy burden to later establish that he entered the plea involuntarily. *Martinez v. State*, 513 S.W.3d 87, 96 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Appellant "acknowledges that he was correctly admonished through the written waivers and admonishments and attested to the [trial] court that he was entering his pleas voluntarily." However, he argues that "an examination of the

record" reveals that he "did not understand the consequences of [his] pleas and did not enter them intelligently and knowingly" because he "entered [his] pleas under duress" and claimed that he was innocent.

Here, the record establishes a prima facie showing that appellant entered his guilty pleas voluntarily and with knowledge of the consequences of entering them, and he has not meet his burden to rebut this showing. Appellant signed and filed, in each trial court case, a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," stating that he was pleading guilty and admitting to the acts alleged in each of the Harris County Grand Jury's indictments. Appellant's trial counsel also signed the "Waiver[s] of Constitutional Rights, Agreement[s] to Stipulate, and Judicial Confession[s]," affirming that he believed that appellant had executed his guilty pleas knowingly, voluntarily, and after a full discussion of the consequences of the pleas. Trial counsel also affirmed that he believed that appellant was competent to stand trial.

Further, appellant signed "Admonishments"[5] in each trial court case, informing him that he had been indicted for the felony offenses of aggravated assault of a family member and aggravated assault and of the punishment range for the offenses. And appellant signed "Statements and Waivers of Defendant"[6] in each

---

[5]     *See id.*

[6]     *See id.*

14

trial court case, affirming that he was mentally competent, "underst[ood] the nature of the charge[s] against" him, understood the trial court's admonishments, understood the consequences of his guilty pleas, and had consulted with his trial counsel about the pleas. Further, appellant stated that he had "read the indictment[s]," "committed each and every element alleged" therein, and freely and voluntarily entered his guilty pleas.

At the plea hearing, appellant testified that he was pleading guilty freely and voluntarily. Although a jury had already been selected and impaneled, appellant stated that he did not want to go forward with a jury trial, he was not being forced to plead guilty, and he understood that he was giving up certain constitutional rights by pleading guilty. Further, appellant reviewed his "plea packets" with his trial counsel and signed them. And the trial court admonished appellant about the ranges of punishment for the felony offenses of aggravated assault of a family member and aggravated assault.

At the sentencing hearing, appellant testified that he had pleaded guilty to the felony offenses of aggravated assault of a family member and aggravated assault as alleged in the Harris County Grand Jury's indictments. He had previously discussed both of his trial court cases with his trial counsel, and his counsel was present at the time that he pleaded guilty. Appellant stated that he had pleaded guilty freely and voluntarily and he had pleaded guilty because he was guilty "and for no other

reason." Appellant also explained that at the time he pleaded guilty, the trial court asked him certain questions about whether his pleas were given freely and voluntarily, and he had responded "[y]es."

Although appellant did also testify at the sentencing hearing that he pleaded guilty to the felony offenses of aggravated assault of a family member and aggravated assault "under duress," he explained that by stating that he was "under duress," he meant that he was "stressed out," he was innocent, and he was "being looked at like a criminal, . . . being disrespected by other family members." Further, he confirmed that no one had "threatened" him into pleading guilty. Rather, he was "stressed" because "these cases . . . ha[d] taken a lot out of [his] life."

A subsequent assertion by appellant that he pleaded guilty because he was "stressed" or placed in a stressful situation is not sufficient to overcome his sworn and repeated representations that he had voluntarily pleaded guilty in each trial court case and does not satisfy appellant's burden of establishing that he entered his guilty pleas involuntarily. *See Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex. Crim. App. 1997) ("[A] showing of an inducement beyond that implicit in the plea bargaining process must be made to prevail on a claim that [a defendant's] pleas were 'involuntary' because they were improperly induced."); *see e.g.*, *Ex parte Altobji*, No. 01-14-01008-CR, 2015 WL 505202, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, no pet.) (mem. op., not designated for publication) (defendant's assertion

16

he pleaded guilty because placed in "a high stress situation" not sufficient to overcome sworn representation he pleaded guilty voluntarily and did not satisfy his burden (internal quotations omitted)).

Further, a subsequent assertion of innocence likewise is not sufficient to overcome appellant's sworn and repeated representations that he voluntarily pleaded guilty in each trial court case and does not satisfy his burden of establishing that he entered his guilty pleas involuntarily. *See Talbott v. State*, 93 S.W.3d 521, 526 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("We will not find an intelligently made plea involuntary simply because the defendant did not correctly assess every relevant factor entering into his decision" (internal quotations omitted)); *see, e.g.*, *Ex parte Tomlinson*, 295 S.W.3d 412, 419–21 (Tex. App.—Corpus Christi 2009, no pet.) (plea not involuntary although defendant asserted innocence and his trial counsel had advised "him to lie and admit guilt"); *Matul v. State*, No. 13-03-062-CR, 2005 WL 1415435, at *4, *6 (Tex. App.—Corpus Christi June 16, 2005, no pet.) (mem. op., not designated for publication) (defendant did not meet burden of establishing he entered plea involuntarily despite asserting innocence where record showed properly admonished and orally affirmed "no one forced or coerced him into making the plea"); *Zimmer v. State*, Nos. 14-99-00209-CR, 14-99-00210-CR, 2001 WL 224821, at *1–4 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not designated for publication) (although defendant claimed innocence at sentencing hearing, he did

not meet burden of showing his plea involuntary); *see also Ex parte Tuley*, 109 S.W.3d 388, 393 (Tex. Crim. App. 2002) (noting "decision to plead guilty . . . may be influenced by factors that have nothing to do with [a] defendant's guilt").

Accordingly, we hold that that the trial court did not err in accepting appellant's guilty pleas.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgments of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish. TEX. R. APP. P. 47.2(b).